UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,     Case No. _____

   v.

                   **COMPLAINT**

ESTATE OF GERTRUDE MOSLEY
1930 W. Nash Street
Milwaukee, WI 53206,

MELVIN L. MOSLEY
1930 W. Nash Street
Milwaukee, WI 53206,

        Defendants.

---

   Comes now the plaintiff, the United States of America, by Matthew D. Krueger, United States Attorney for the Eastern District of Wisconsin, and Carter B. Stewart, Assistant United States Attorney for said District, and for its cause of action alleges that:

   1.   This is a civil action brought by the United States of America under 28 U.S.C. §1345.

   2.   The United States seeks to foreclose a reverse mortgage between Gertrude Mosley and the Department of Housing & Urban Development ("HUD"). For reverse mortgages, payment of the debt is not made by monthly payments, but rather by the sale of the mortgaged premises.

   3.   Gertrude Mosley executed and delivered to Unity Mortgage Corp. a promissory note dated October 3, 1997. Financial Freedom Senior Funding Corporation, as assignee of said note, prepared an Affidavit of Lost Note indicating that said note is lost. The Affidavit of Lost Note is attached hereto as Exhibit A.

4.     Upon information and belief, the interest rate on the note was 3.62%.

5.     To secure said note, Gertrude Mosley executed and delivered to Unity Mortgage Corp., its successors and assigns, an Adjustable Rate Home Equity Conversion Mortgage filed October 27, 1997, attached as Exhibit B.

6.     On November 1, 2000, Unity Mortgage Corp assigned their interest in the Note and Mortgage described in paragraphs 2 and 3 to Financial Freedom Senior Funding Corporation, a copy of which is hereto annexed as Exhibit C.

7.     On April 10, 2009, Financial Freedom Senior Funding Corporation assigned to the Secretary of Housing and Urban Development the note and mortgage described in paragraphs 2 and 3.   A copy of the assignment is annexed as Exhibit D.

8.     Gertrude Mosley also executed and delivered to the Secretary of Housing and Urban Development a second Adjustable Rate Home Equity Conversion Mortgage dated October 3, 1997 to secure the reverse mortgage.   A copy of the second mortgage is attached as Exhibit E.

9.     Gertrude Mosley passed away on April 29, 2016; a copy of the death certificate is hereto annexed as Exhibit F.

10.     No action has been filed to probate the Estate of Gertrude Mosley.

11.     Under the terms of the above notes and mortgages, default occurred on the date of death of Gertrude Mosley.   Consistent with said terms and default, full and immediate payment is due and demanded.

12.     The Estate of Gertrude Mosley owes the Plaintiff under the provisions of the notes, and mortgages a balance of $59,894.28 as of September 21, 2018.   A Statement of Account is attached hereto as Exhibit G.

13.     Plaintiff has made the following payments as permitted by the provisions of said mortgages that have become a part of the mortgage indebtedness.

| | |
|---|---|
| Service fee (monthly fee) | $5,199.46 |
| MIP (insurance) | $3,430.89 |

14.     The other defendants purport to have interest in the mortgaged premises but any such interests are junior and subordinate to the interest of the plaintiff.

WHEREFORE, plaintiff prays that an accounting be taken under the direction of this Court of what is due for principal and interest on the notes and mortgages and that a decree be entered as follows:

(a)     That the defendant pay to plaintiff the principal of $28,284.69 and interest of $22,979.24, together with interest from September 21, 2018 at the rate of $6.76 per day computed at the rate of 3.62 percent per annum up to the date on which the decree is entered, plus interest thereafter according to law, costs, disbursements, and expenses;

(b)     Or in default of such payment, that all legal right, title, and interest that defendant has in the property described in said mortgage be sold at public sale in accordance with 28 U.S.C. §§2001-2003, inclusive, and that the amounts due to plaintiff be paid out of the proceeds of the sale pursuant to the lien priority of its mortgages;

(c)     That the defendants and all persons claiming or who may claim by, from, or under it be absolutely barred and foreclosed from all rights and equity of redemption in the property;

(d)     That if the proceeds of the sale exceed the sum of money to be paid to plaintiff; any such excess be deposited with the Clerk of this Court subject to further orders of the Court;

(e)     For such other and further relief as is just.

Dated at Milwaukee, Wisconsin this 11th day of March, 2019.

MATTHEW D. KRUEGER
United States Attorney

By    *s/Carter B. Stewart*

CARTER B. STEWART
Assistant United States Attorney
Illinois State Bar No. 6300958
Office of the United States Attorney
Federal Building, Room 530
517 East Wisconsin Avenue
Milwaukee, Wisconsin   53202
Telephone:   (414) 297-1700
Fax: 414-297-4394
carter.stewart@usdoj.gov


*1*

# Affidavit of Lost Note

I, **Carol Norton**, as First Vice President, of Financial Freedom Senior Funding Corporation (The "Lender"), being duly sworn, do hereby state under oath that: The lender is the payee under the following described mortgage note (The "Note"):

Date: October 3, 1997
FNMA: 6000025394
Borrower(s): Gertrude Mosley
Original Amount: $67,500.00
Rate of Interest: 6.6700%
Address of Mortgaged Property: 1930 West Nash Street, Milwaukee, WI 53206
Recorded on October 27, 1997, in Reel 4168; Image 733; in Milwaukee County, State of Wisconsin.

The Lender is the lawful owner of the Note, and the lender has not cancelled, altered, assigned, or hypothecated the Note.

The Note was not located after a thorough and diligent search which consisted of the following actions: Search through all corresponding files.

This Affidavit is intended to be relied on by the Federal National Mortgage Association, Its' Successors and Assigns.

Financial Freedom Senior Funding Corporation.

By Carol Norton
Title: First Vice President

STATE OF TEXAS
COUNTY OF TRAVIS
On February 13, 2009, before me, Kassondra Lynette Johnson, a notary public in and for TRAVIS County, in the State of TEXAS, personally appeared Carol Norton, FIRST VICE PRESIDENT of FINANCIAL FREEDOM SENIOR FUNDING CORPORATION. 7700 W. PARMER LANE, BLDG. D, AUSTIN, TX 78729, personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or entity upon behalf of which the person acted executed the instrument.
WITNESS my hand and official seal

Signature

KASSONDRA LYNETTE JOHNSON
Notary Public, State of Texas
My Commission Expires
December 05, 2012

**Exhibit A**

**7439828**

Mortgage

Document Number.

Document Title

REEL **4168** IMAGE **733**

REGISTER'S OFFICE } ss
Milwaukee County, WI      -10 30 AM
RECORDED AT _____
OCT 27 1997  733 to
REEL 4168 IMAGE 741 mil.
Deana Auryl  REGISTER
OF DEEDS

Recording Area

Name and Return Address

Gertrude Mosley
1930 W. Nash St.
Milwaukee, WI  53206

298205

Parcel Identification Number (PIN)

Lot Seven (7) in Block Four (4) in NASH'S SUBDIVISION OF LOT 5 IN
SUBDIVISION "B", in the Southwest One-quarter (1/4) of the Northeast
One-quarter (1/4) of Section Seven (7), in Township Seven (7) North,
Range Twenty-two (22) East, in the City of Milwaukee, County of
Milwaukee, State of Wisconsin.

1930 West Nash Street

**7439828**
*RECORD*     26.00

This information must be completed by submitter: *document title, name & return address,* and *PIN (if required). Other information such
as the granting clauses, legal description, etc., may be placed on this first page of the document or may be placed on additional pages of the
document. Note: Use of this cover page adds one page to your document and $2.00 to the recording fee.* Wisconsin Statutes, 59.517. WRDA 2/96

Doc Yr: 2011 Doc# 07439828 Page# 1 of 9

**Exhibit B**

# ADJUSTABLE RATE HOME
# EQUITY CONVERSION
# MORTGAGE

**RECORD AND RETURN TO:**
UNITY MORTGAGE CORP.
600 EMBASSY ROW, 6600 PEACHTREE DUNWOODY RD #600
ATLANTA, GEORGIA 30328

Parcel ID Number:

--------------------- [Space Above This Line For Recording Data] ---------------------

**State of Wisconsin**

FHA Case No. 581:2030946-952/255
976616110033

THIS MORTGAGE ("Security Instrument") is given on **OCTOBER 03, 1997** . The mortgagor is
**GERTRUDE MOSLEY , SOLELY A SINGLE PERSON**

whose address is **1930 WEST NASH STREET,** ("Borrower").
**MILWAUKEE, WISCONSIN 53206**
This Security Instrument is given to
**UNITY MORTGAGE CORP.** , which is
organized and existing under the laws of **THE STATE OF GEORGIA** , and whose address is
**600 EMBASSY ROW, 6600 PEACHTREE DUNWOODY RD #600, ATLANTA, GEORGIA 30328**
("Lender"). Borrower has agreed to repay to Lender
amounts which Lender is obligated to advance, including future advances, under the terms of a Home Equity
Conversion Loan Agreement dated the same date as this Security Instrument ("Loan Agreement"). The agreement
to repay is evidenced by Borrower's Note dated the same date as this Security Instrument ("Note"). This Security
Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest at a rate subject to
adjustment, and all renewals, extensions and modifications of the Note, up to a maximum principal amount of
**SIXTY SEVEN THOUSAND FIVE HUNDRED AND 00/100** - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
(U.S. $ **67,500.00** ); (b) the payment of all other sums, with interest, advanced under Paragraph 5 to
protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and
(c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. The full
debt, including amounts described in (a), (b), and (c) above, if not paid earlier, is due and payable on
**APRIL 13** , **2074** . For this purpose, Borrower does hereby mortgage, grant and convey to Lender, with
power of sale, the following described property located in **MILWAUKEE** County, Wisconsin:

*Gm.*

XD36 : 01/97

Page 1 of 8

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

which has the address of  **1930 WEST NASH STREET**

[Street]

**MILWAUKEE**                    , **WISCONSIN**                **53206**        ("Property Address");

[City]                                [State]                  [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note.

2. **Payment of Property Charges.** Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement.

3. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender or the Secretary of Housing and Urban Development ("Secretary"). Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender instead of to Borrower and to Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be

00XA : 11/96                        Page 2 of 8

lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

4. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence after the execution of this Security Instrument, and Borrower (or at least one Borrower, if initially more than one person are Borrowers) shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

5. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

6. **Inspection.** Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

7. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property, and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

03XA : 11/96

Case 2:19-cv-00358-PP   Filed 03/11/19   Page 4 of 9   Document 1-2

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Due and Payable.** Lender may require immediate payment in full of all sums secured by this Security Instrument if:

(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

(ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property).

(b) **Due and Payable with Secretary Approval.** Lender may require immediate payment in full of all sums secured by this Security Instrument, upon approval of the Secretary, if:

(i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

(ii) For a period of longer than twelve (12) consecutive months, a Borrower fails to occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(iii) An obligation of the Borrower under this Security Instrument is not performed.

(c) **Notice to Lender.** Borrower shall notify Lender whenever any of the events listed in this Paragraph (a) (ii) or (b) occur.

(d) **Notice to Secretary and Borrower.** Lender shall notify the Secretary and Borrower whenever the loan becomes due and payable under Paragraph 9 (a) (ii) or (b). Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:

(i) Correct the matter which resulted in the Security Instrument coming due and payable; or

(ii) Pay the balance in full; or

(iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

(iv) Provide the Lender with a deed in lieu of foreclosure.

(e) **Trusts.** Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 9. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9.

(f) **Mortgage Not Insured.** Borrower agrees that should this Security Instrument and the Note not be eligible for insurance under the National Housing Act within **SIXTY DAYS** from the date hereof, if permitted by applicable law Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to **SIXTY DAYS** from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. No Deficiency Judgments.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed. If this Security Instrument is assigned to the Secretary upon demand by the Secretary, Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

**11. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment in full. Foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding shall

04XA : 11/96 Page 4 of 8

Case 2:19-cv-00358-PP   Filed 03/11/19   Page 5 of 9   Document 1-2

be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

**12. Lien Status.**

(a) **Modification.** Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the Property is not encumbered by any liens (except this Security Instrument, the Second Security Instrument described in Paragraph 13(a) and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute any documents necessary to protect the lien status of future loan advances. Borrower agrees to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

(b) **Tax Deferral Programs.** Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

(c) **Prior Liens.** Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**13. Relationship to Second Security Instrument.**

(a) **Second Security Instrument.** In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to execute a Second Note and a Second Security Instrument on the Property.

(b) **Relationship of First and Second Security Instruments.** Payments made by the Secretary shall not be included in the debt under the Note unless:

(i) This Security Instrument is assigned to the Secretary; or

(ii) The Secretary accepts reimbursement by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, but excluding late charges paid by the Secretary, shall be included in the debt under the Note.

(c) **Effect on Borrower.** Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

(i) Be required to pay amounts owed under the Note, or pay any rents and revenues of the Property under Paragraph 19 to Lender or a receiver of the Property, until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note; or

(ii) Be obligated to pay interest or shared appreciation under the Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the Note..

08XA: 11/98          Page 5 of 8

(d) **No Duty of the Secretary.** The Secretary has no duty to Lender to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though Lender may be unable to collect amounts owed under the Note because of restrictions in this Paragraph 13.

14. **Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

15. **Successors and Assigns Bound; Joint and Several Liability.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender. Borrower may not assign any rights or obligations under this Security Instrument or under the Note, except to a trust that meets the requirements of the Secretary. Borrower's covenants and agreements shall be joint and several.

16. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16.

17. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

18. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

19. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

20. **Foreclosure Procedure. If Lender requires immediate payment in full under Paragraph 9, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give notice of sale in the manner prescribed by applicable law to Borrower and to the other persons prescribed by applicable law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums**

XD37 : 01/97                    Page 6 of 8

secured by this Security Instrument; and (c) any excess to the clerk of the circuit court of the county in which the sale is held.

**21. Lien Priority.** The full amount secured by this Security Instrument shall have the same priority over any other liens on the Property as if the full amount had been disbursed on the date the initial disbursement was made, regardless of the actual date of any disbursement. The amount secured by this Security Instrument shall include all direct payments by Lender to Borrower and all other loan advances permitted by this Security Instrument for any purpose. This lien priority shall apply notwithstanding any State constitution, law or regulation, except that this lien priority shall not affect the priorty of any liens for unpaid State or local governmental unit special assessments or taxes.

**22. Adjustable Rate Feature.** Under the Note, the initial stated interest rate of 6.6700 % which accrues on the unpaid principal balance ("Initial Interest Rate") is subject to change, as described below. When the interest rate changes, the new adjusted interest rate will be applied to the total outstanding principal balance. Each adjustment to the interest rate will be based upon the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board in Statistical Release H.15 (519) ("Index") plus a margin. If the Index is no longer available, Lender will use as a new Index any index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

Lender will perform the calculations described below to determine the new adjusted interest rate. The interest rate may change on the first day of **DECEMBER, 1997** , and on ☐ that day of each succeeding year ☒ the first day of each succeeding month ("Change Date") until the loan is repaid in full.

The value of the Index will be determined, using the most recent Index figure available thirty (30) days before the Change Date ("Current Index"). Before each Change Date, the new interest rate will be calculated by adding a margin to the Current Index. The sum of the margin plus the Current Index will be called the "Calculated Interest Rate" for each Change Date. The Calculated Interest Rate will be compared to the interest rate in effect immediately prior to the current Change Date (the "Existing Interest Rate").

☐ (Annually Adjusting Variable Rate Feature) The Calculated Interest Rate cannot be more than 2.0% higher or lower than the Existing Interest Rate, nor can it be more than 5.0% higher or lower than the Initial Interest Rate.

☒ (Monthly Adjusting Variable Rate Feature) The Calculated Interest Rate will never increase above **SIXTEEN AND 670/1000** percent ( 16.67000 %).

The Calculated Interest Rate will be adjusted if necessary to comply with these rate limitation(s) and will be in effect until the next Change Date. At any Change Date, if the Calculated Interest Rate equals the Existing Interest Rate, the interest rate will not change.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**24. Accelerated Redemption Periods.** If (a) the Property is 20 acres or less in size, (b) Lender in an action to foreclose this Security Instrument waives all right to a judgment for deficiency and (c) Lender consents to Borrower's remaining in possession of the Property, then the sale of the Property may be 6 months from the date the judgment is entered if the Property is owner-occupied at the time of the commencement of the foreclosure action. If conditions (b) and (c) above are met and the Property is not owner-occupied at the time of the commencement of the foreclosure action, then the sale of the Property may be 3 months from the date the judgment is entered. In any event, if the Property has been abandoned, then the sale of the Property may be 2 months from the date the judgment is entered.

**25. Attorneys' Fees.** If this Security Instrument is subject to Chapter 428 of the Wisconsin Statutes, "reasonable attorneys' fees" shall mean only those attorneys' fees allowed by that Chapter.

**26. Obligatory Loan Advances.** Lender's responsibility to make Loan Advances under the terms of the Loan Agreement, including Loan Advances of principal to Borrower as well as Loan Advances for interest, MIP, Servicing Fees and other charges, shall be obligatory.

XD38 : 05/97                                    Page 7 of 8

**27. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

☐ Condominium Rider      ☐ Shared Appreciation Rider      ☐ Planned Unit Development Rider
☐ Other (Specify)

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____    _Gertrude M Mosley_    (Seal)
                            GERTRUDE MOSLEY                  -Borrower

_____    _____ (Seal)
                                                                -Borrower

———————————————— [Space Below This Line For Acknowledgment] ————————————————

STATE OF WISCONSIN          ,          MILWAUKEE COUNTY SS:

The foregoing instrument was acknowledged before me this    **OCTOBER 03, 1997**      , by
GERTRUDE MOSLEY

My commission expires: 'is _permanent_      _____
                                                     Notary Public

(Seal)

                                                       ELAINE L. STARSIAK
                                                       STATE OF WISCONSIN

This instrument was drafted by: _Kevith Ulven_
UNITY MORTGAGE CORP.



DOC.# 08932486

Doc No.          ASSIGNMENT OF MORTGAGE

REGISTER'S OFFICE   | SS
Milwaukee County, WI|

RECORDED  01/11/2005  11:51AM

JOHN LA FAVE
REGISTER OF DEEDS

AMOUNT:11.00

Return to:
Nationwide Title Clearing
2100 Alt 19 North
Palm Harbor, FL 34683
PIN

FFSF#: 64248
INV#:  6000025394
UMC#:  976616110033

FOR GOOD AND VALUABLE CONSIDERATION,
the sufficiency of which is
hereby acknowledged, the undersigned,
**Unity Mortgage Corp.**
a Georgia Corporation whose address is 7840 Roswell Road,
Bldg 300 Suite 301, Atlanta, GA 30350, (assignor),
by these presents does convey, grant, sell, assign, transfer and
set over the described Mortgage together with the certain note(s)
described therein, without recourse, representation or warranty,
together with all right, title and interest secured thereby,
all liens, and any rights due or to become due thereon to
**FINANCIAL FREEDOM SENIOR FUNDING CORPORATION,**
a Delaware Corporation, whose address is
353 Sacramento Street, Suite 900, San Francisco, CA 94111,
its successors or assigns, (assignee).
Said Mortgage bearing the date 10/03/97, made by
**GERTRUDE MOSLEY**
to **UNITY MORTGAGE CORP**
and recorded in Official Records Book 4168  , Page 733  ,
Document# 7439828        in office of the Register of Deeds
of MILWAUKEE      County, Wisconsin, to wit:
   LOT SEVEN (7) IN BLOCK FOUR (4) IN NASH'S SUBDIVISION OF LOT
   5 IN SUBDIVISION "B", IN THE SOUTHWEST ONE-QUARTER (1/4) OF
   THE NORTHEAST ONE-QUARTER (1/4) OF SECTION SEVEN (7), IN
   TOWNSHIP SEVEN (7) NORTH, RANGE TWENTY-TWO (22) EAST, IN THE
   CITY OF MILWAUKEE, COUNTY OF MILWAUKEE, STATE OF WISCONSIN.
IN WITNESS WHEREOF the said corporation has caused these presents to
be executed in its name by its proper officers thereunto duly
authorized, this  6th day of October, 2004
The assignment and conveyance evidenced by this instrument
was effective on or about November 1, 2000, notwithstanding
the late execution and delivery hereof.

Unity Mortgage Corp.

By: _____          ATTEST: _____
   Garth E Beard                        Frances S Brigman
   CFO                                  Secretary

STATE OF GEORGIA              COUNTY OF GWINNETT
I HEREBY CERTIFY that on this day, before me, an officer duly
authorized in the State and County aforesaid to take acknow-
ledgements personally appeared Garth E Beard              and
Frances S Brigman
well known to me to be the CFO
and Secretary                                respectively of
Unity Mortgage Corp.
a corporation, and that they severally acknowledged executing
the same freely and voluntarily under authority duly vested
in them by said corporation.
WITNESS my hand and official seal in the County and State last
aforesaid this 6th day of October, 2004

_____
Marlena M. Martin                     Notary Public
My commission expires 01/06/2007
This instrument was drafted by
V,Escalante/NTC,2100 Alt 19 N., Palm Harbor, FL 34683

FFSUA DN 26DN

RECORDING REQUESTED BY:
Financial Freedom Senior Funding Corporation

AND WHEN RECORDED MAIL TO:
Financial Freedom Senior Funding Corporation
7700 W Parmer Lane, Bldg D
Austin, TX 78729
Attn Michele Blackledge

PREPARED BY Michele Blackledge
Address 7700 W Parmer Lane, Bldg D
Austin, TX 78729
Telephone Number (512) 506-6802

**DOC.# 09729785**

REGISTER'S OFFICE | SS
Milwaukee County, WI|

RECORDED    04/23/2009   08:32AM

JOHN LA FAVE
REGISTER OF DEEDS
AMOUNT:          11.00
FEE EXEMPT 77.25 #;   0

FHA Loan Number  581-2030946

Space above this line for recorder's use

## CORPORATION ASSIGNMENT OF MORTGAGE

For value received, FINANCIAL FREEDOM SENIOR FUNDING CORPORATION, SUCCESSOR BY MERGER WITH HOMEFIRST, INC (formerly known as Transamerica HomeFirst, Inc ) (herein "Assignor") a California Corporation, whose address is 353 SACRAMENTO STREET, SAN FRANCISCO, CA 94111, does hereby grant, sell, assign, transfer and convey, unto the SECRETARY OF HOUSING AND URBAN DEVELOPMENT WASHINGTON D C (herein, "Assignee"), a certain MORTGAGE dated OCTOBER 3, 1997, and executed by GERTRUDE MOSLEY, A SINGLE PERSON, to and in favor of UNITY MORTGAGE CORP , and recorded on OCTOBER 27, 1997, as REEL 4168  IMAGE 733  in MILWAUKEE County, State of WISCONSIN
SEE ATTACHED LEGAL DESCRIPTION BELOW

Property Address  1930 WEST NASH STREET, MILWAUKEE, WISCONSIN 53206

WITHOUT RECOURSE OR WARRANTY, except that the undersigned hereby warrants that (a) no act or omission of the undersigned has impaired the validity and priority of the said security instruments, (b) the security instrument is a good and valid first lien and is prior to all mechanics' and materialmen's liens filed of record regardless of when such liens attach, and prior to all liens, encumbrances, or defects which may arise except such liens or other matters as have been approved by the assignee hereunder, (c) the sum of $67,500 00 together with the interest from the 3RD day of OCTOBER, 1997, at the rate of 6 6700%, computed as provided in the credit instrument, is actually due and owing under the said credit instrument and (d) the undersigned has a good right to assign the said security and credit instruments "

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of MORTGAGE on April 10, 2009

FINANCIAL FREEDOM SENIOR FUNDING CORPORATION

By V LYN NILES
Title VICE PRESIDENT

Lot Seven (7) in Block Four (4) in NASH'S SUBDIVISION OF LOT 5 IN SUBDIVISION "B", in the Southwest One-quarter (1/4) of the Northeast One-quarter (1/4) of Section Seven (7), in Township Seven (7) North, Range Twenty-two (22) East, in the City of Milwaukee, County of Milwaukee, State of Wisconsin.

1930 West Nash Street

STATE OF TEXAS
COUNTY OF WILLIAMSON
On April 10, 2009, before me, KASSONDRA LYNETTE JOHNSON, a notary public in and for WILLIAMSON County, in the State of TEXAS, personally appeared V LYN NILES, VICE PRESIDENT of FINANCIAL FREEDOM SENIOR FUNDING CORPORATION, C/O 7700 W PARMER LANE BLDG D, AUSTIN, TX 78729, personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that She executed the same in her authorized capacity, and that by her signature on the instrument the person, or entity upon behalf of which the person acted executed the instrument
WITNESS my hand and official seal

Signature Kassondra Lynette Johnson

KASSONDRA LYNETTE JOHNSON
Notary Public, State of Texas
My Commission Expires
December 05, 2012

**1930 WEST NASH STREET, MILWAUKEE, WISCONSIN 53206**
[Property Address]

## 1. DEFINITIONS

"Borrower" means each person signing at the end of this Note. "Secretary" or "Lender" means the Secretary of Housing and Urban Development or his or her authorized representatives.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for amounts to be advanced by Lender to or for the benefit of Borrower under the terms of a Home Equity Conversion Loan Agreement dated **OCTOBER 03, 1997** ("Loan Agreement"), Borrower promises to pay to the order of Lender a principal amount equal to the sum of all Loan Advances made under the Loan Agreement with interest. All amounts advanced by Lender, plus interest, if not paid earlier, are due and payable on **APRIL 13 , 2074 .** Interest will be charged on unpaid principal at the rate of **SIX AND 670/1000** percent ( **6.6700%**) per year until the full amount of principal has been paid. The interest rate may change in accordance with Paragraph 5 of this Note. Accrued interest shall be added to the principal balance as a Loan Advance at the end of each month. Solely for the purpose of calculating interest, a payment received by Lender within 30 days prior to or after the date it is due will be deemed to be paid on such due date.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument" or "Second Security Instrument." That Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note. Borrower also executed a First Security Instrument and First Note when the Second Security Instrument and this Note were executed.

## 4. MANNER OF PAYMENT

**(A) Time**

Borrower shall pay all outstanding principal and accrued Interest to Lender upon receipt of a notice by Lender requiring immediate payment in full, as provided in Paragraph 7 of this Note.

**(B) Place**

Payment shall be made at the Office of the Housing-FHA Comptroller, Director of Mortgage Insurance Accounting and Servicing, 451 7th Street, S.W., Washington, DC 20410, or any such other place as Lender may designate in writing by notice to Borrower.

**(C) Limitation of Liability**

Borrower shall have no personal liability for payment of the debt. Lender shall enforce the debt only through sale of the Property covered by the Security Instrument ("Property").

## 5. INTEREST RATE CHANGES

**(A) Change Date**

The interest rate may change on the first day of **DECEMBER, 1997** , and on ☐ that day of each succeeding year ☒ the first day of each succeeding month. "Change Date" means each date on which the interest rate could change.

**(B) The Index**

Beginning with the first Change Date, the interest rate will be based on an Index. "Index" means the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. "Current Index" means the most recent Index figure available 30 days before the Change Date. If the Index (as defined above) is no longer available, Lender will use as a new Index any index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

**(C) Calculation of Interest Rate Changes**

Before each Change Date, Lender will calculate a new interest rate by adding a margin of **ONE AND 200/1000** percentage points ( 1.20000%) to the Current Index. Subject to the limits stated in Paragraph 5(D) of this Note, this amount will be the new interest rate until the next Change Date.

**(D) Limits on Interest Rate Changes**

☐ The interest rate will never increase or decrease by more than two percentage points (2.0%) on any single Change Date. The interest rate will never be more than five percentage points (5.0%) higher or lower than the initial interest rate stated in Paragraph 2 of this Note.

☒ The interest rate will never increase above **SIXTEEN AND 670/1000** percent ( **16.67000 %**).

**(E) Notice of Changes**

Lender will give notice to Borrower of any change in the interest rate. The notice must be given at least 25 days before the new interest rate takes effect, and must set forth (i) the date of the notice, (ii) the Change Date, (iii) the old interest rate, (iv) the new interest rate, (v) the Current Index and the date it was published, (vi) the method of calculating the adjusted interest rate, and (vii) any other information which may be required by law from time to time.

A Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty. Any amount of debt prepaid will first be applied to reduce the principal balance of this Note and then reduce the principal balance of the First Note.

All prepayments of the principal balance shall be applied by Lender as follows:

First, to that portion of the principal balance representing aggregate payments for mortgage insurance premiums;

Second, to that portion of the principal balance representing aggregate payments for servicing fees;

Third, to that portion of the principal balance representing accrued interest due under the Note; and

Fourth, to the remaining portion of the principal balance. A Borrower may specify whether a prepayment is to be credited to that portion of the principal balance representing monthly payments or the line of credit. If Borrower does not designate which portion of the principal balance is to be prepaid, Lender shall apply any partial prepayments to an existing line of credit or create a new line of credit.

## 7. IMMEDIATE PAYMENT IN FULL

### (A) Death or Sale

Lender may require immediate payment in full of all outstanding principal and accrued interest if:

(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower, or

(ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property).

### (B) Other Grounds

Lender may require immediate payment in full of all outstanding principal and accrued interest, upon approval by an authorized representative of the Secretary, if:

(i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower;

(ii) For a period of longer than 12 consecutive months, a Borrower fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(iii) An obligation of the Borrower under the Security Instrument is not performed.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full as described above, the debt enforced through sale of the Property may include costs and expenses, including reasonable and customary attorneys' fees, associated with enforcement of this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

### (D) Trusts

Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph.

## 8. WAIVERS

Borrower waives the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 9. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the Property Address above or at a different address if Borrower has given the Secretary a notice of Borrower's different address.

Any notice that must be given to the Secretary under this Note will be given by first class mail to the HUD Field Office with jurisdiction over the Property or at any other address designated by the Secretary.

## 10. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note only through sale of the Property.

## 11. RELATIONSHIP TO FIRST NOTE

### (A) Second Note

Because Borrower will be required to repay amounts which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to grant this Note to the Secretary.

### (B) Relationship of Secretary Payments to First Note

Payments made by the Secretary shall not be included in the debt due under this Note unless:

(i) The First Note is assigned to the Secretary; or

(ii) The Secretary accepts reimbursements by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, shall be included in the debt under the First Note.

If Borrower has executed a Shared Appreciation Allonge, the covenants of the Allonge shall be incorporated into and supplement the covenants of this Note as if the Allonge were a part of this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_Gertrude Mosley_ _____ (Seal)
GERTRUDE MOSLEY                             -Borrower

_____ (Seal)
                                         -Borrower

**7439829**

Second Mortgage

Document Number

Document Title

REEL **4168** IMAG **742**

REGISTER'S OFFICE } **SS**
Milwaukee County, WI
RECORDED AT 10 30 AM

OCT 2 7 1997    742 to

REEL 4168 IMAGE 750 incl.

Nama A. Remyl

REGISTER
OF DEEDS

Recording Area

Name and Return Address

Gertrude Mosley
1930 W. Nash St.
Milwaukee, WI  53206

298205

Parcel Identification Number (PIN)

Lot Seven (7) in Block Four (4) in NASH'S SUBDIVISION OF LOT 5 IN
SUBDIVISION "B", in the Southwest One-quarter (1/4) of the Northeast
One-quarter (1/4) of Section Seven (7), in Township Seven (7) North,
Range Twenty-two (22) East, in the City of Milwaukee, County of
Milwaukee, State of Wisconsin.

1930 West Nash Street

7439829

RECORD    26.00

This information must be completed by submitter: *document title, name & return address*, and *PIN* (if required). Other information such
as the granting clauses, legal description, etc. may be placed on this *first page of the document* or may be placed on additional pages of the
document. Note: Use of this cover page adds one page to your document and *$2.00 to the recording fee*. Wisconsin Statutes, 59.517.    WRDA 2/96

Doc Yr: 2011 Doc# 07439829 Page# 1 of 9

**Exhibit E**

# ADJUSTABLE RATE HOME
# EQUITY CONVERSION
# SECOND MORTGAGE

**RECORD AND RETURN TO:**
UNITY MORTGAGE CORP.
600 EMBASSY ROW, 6600 PEACHTREE DUNWOODY RD #600
ATLANTA, GEORGIA 30328

Parcel ID Number:

───────────────── [Space Above This Line For Recording Data] ─────────────────

**State of Wisconsin**

FHA Case No. **581:2030946-952/255**
976616110033

THIS MORTGAGE ("Security Instrument" or "Second Security Instrument") is given on
OCTOBER 03, 1997 . The mortgagor is
GERTRUDE MOSLEY , ~~NOBERY~~ A SINGLE PERSON

whose address is **1930 WEST NASH STREET,**
**MILWAUKEE, WISCONSIN 53206** ("Borrower"). This Security Instrument
is given to the Secretary of Housing and Urban Development, whose address is 451 Seventh Street, S.W.,
Washington, DC 20410 ("Lender" or "Secretary"). Borrower has agreed to repay to Lender amounts which Lender
is obligated to advance, including future advances, under the terms of a Home Equity Conversion Loan Agreement
dated the same date as this Security Instrument ("Loan Agreement"). The agreement to repay is evidenced by
Borrower's Note dated the same date as this Security Instrument ("Second Note"). This Security Instrument
secures to Lender: (a) the repayment of the debt evidenced by the Second Note, with interest, at a rate subject to
adjustment, and all renewals, extensions and modifications of the Note, up to a maximum principal amount of
SIXTY SEVEN THOUSAND FIVE HUNDRED AND 00/100 - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - (b) the payment of all other sums, with interest, advanced under Paragraph 5 to
(U.S. $ 67,500.00 ); protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and
(c) the performance of Borrower's covenants and agreements under this Security Instrument and the Second Note.
The full debt, including amounts described in (a), (b), and (c) above, if not paid earlier, is due and payable on
APRIL 13 , 2074 . For this purpose, Borrower does hereby mortgage, grant and convey to Lender, with
power of sale, the following described property located in MILWAUKEE County, Wisconsin:

XD40 : 01/97

Page 1 of 8

*Sym*

**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF**

which has the address of  **1930 WEST NASH STREET**                               ,
                                       **[Street]**

**MILWAUKEE**                      ,  **WISCONSIN**                      **53206**                      ("Property Address");
  **[City]**                                **[State]**            **[Zip Code]**

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is only encumbered by a First Security Instrument given by Borrower and dated the same date as this Security Instrument ("First Security Instrument"). Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Second Note.

2. **Payment of Property Charges.** Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement. Lender may require Borrower to pay specified property charges directly to the party owed payment even though Lender pays other property charges as provided in this Paragraph.

3. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender instead of to Borrower and Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's

10XA : 09/97                             Page 2 of 8

security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under the Second Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Second Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

4. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence after the execution of this Security Instrument, and Borrower (or at least one Borrower, if initially more than one person are Borrowers) shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

5. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

6. **Inspection.** Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

7. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under a Second Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Second Note and this Security Instrument shall be paid to the entity legally entitled thereto.

13XA : 11/96

Page 3 of 8

**8. Fees.** Lender may collect fees and charges authorized by the Secretary for the Home Equity Conversion Mortgage Insurance Program.

**9. Grounds for Acceleration of Debt.**

(a) **Due and Payable.** Lender may require immediate payment in full of all sums secured by this Security Instrument if:

(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

(ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property); or

(iii) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

(iv) For a period of longer than twelve (12) consecutive months, a Borrower fails to occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(v) An obligation of the Borrower under this Security Instrument is not performed.

(b) **Notice to Lender.** Borrower shall notify Lender whenever any of the events listed in Paragraph 9(a)(ii)-(v) occur.

(c) **Notice to Borrower.** Lender shall notify Borrower whenever the loan becomes due and payable under Paragraph 9 (a)(ii)-(v). Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:

(i) Correct the matter which resulted in the Security Instrument coming due and payable; or

(ii) Pay the balance in full; or

(iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

(iv) Provide the Lender with a deed in lieu of foreclosure.

(d) **Trusts.** Conveyance of Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 9. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9.

**10. No Deficiency Judgments.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed.

**11. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment in full. Foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

14XA : 11/96

Page 4 of 8

**12. Lien Status.**

(a) **Modification.** Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the Property is not encumbered by any liens (except the First Security Instrument described in Paragraph 13(a), this Second Security Instrument and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute any documents necessary to protect the lien status of future loan advances. Borrower agrees to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

(b) **Tax Deferral Programs.** Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

(c) **Prior Liens.** Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**13. Relationship to First Security Instrument.**

(a) **Second Security Instrument.** In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to execute a Second Note and this Second Security Instrument. Borrower also has executed a First Note and First Security Instrument.

(b) **Relationship of First and Second Security Instruments.** Payments made by the Secretary shall not be included in the debt under the First Note unless:

(i) The First Security Instrument is assigned to the Secretary; or

(ii) The Secretary accepts reimbursement by the holder of the First Note for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, but excluding late charges paid by the Secretary, shall be included in the debt under the First Note.

(c) **Effect on Borrower.** Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

(i) Be required to pay amounts owed under the First Note, or pay any rents and revenues of the Property under Paragraph 19 to the holder of the First Note or a receiver of the Property, until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note; or

(ii) Be obligated to pay interest or shared appreciation under the First Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the First Note.

(d) **No Duty of the Secretary.** The Secretary has no duty to the holder of the First Note to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though the holder of the First Note may be unable to collect amounts owed under the First Note because of restrictions in this Paragraph 13.

16XA : 11/96                 Page 5 of 8

Doc Yr: 2011 Doc# 07439829 Page# 6 of 9

Case 2:19-cv-00358-PP   Filed 03/11/19   Page 6 of 9   Document 1-5

(e) **Restrictions on Enforcement.** Notwithstanding anything else in this Security Instrument, the Borrower shall not be obligated to comply with the covenants hereof, and Paragraph 19 shall have no force and effect, whenever there is no outstanding balance under the Second Note.

14. **Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

15. **Successors and Assigns Bound; Joint and Several Liability.** Borrower may not assign any rights or obligations under this Security Instrument or the Second Note, except to a trust that meets the requirements of the Secretary. Borrower's covenants and agreements shall be joint and several.

16. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any notice to the Secretary shall be given by first class mail to the HUD Field Office with jurisdiction over the Property or any other address designated by the Secretary. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16.

17. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Second Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Second Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Second Note are declared to be severable.

18. **Borrower's Copy.** Borrower shall be given one conformed copy of the Second Note and this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

19. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19, except as provided in the First Security Instrument.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

20. **Foreclosure Procedure.** If Lender requires immediate payment in full under Paragraph 9, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give notice of sale in the manner prescribed by applicable law to Borrower and to the other persons prescribed by applicable law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums

secured by this Security Instrument; and (c) any excess to the clerk of the circuit court of the county in which the sale is held.

**21. Lien Priority.** The full amount secured by this Security Instrument shall have a lien priority subordinate only to the full amount secured by the First Security Instrument.

**22. Adjustable Rate Feature.** Under the Second Note, the initial stated interest rate of 6.6700 % which accrues on the unpaid principal balance ("Initial Interest Rate") is subject to change, as described below. When the interest rate changes, the new adjusted interest rate will be applied to the total outstanding principal balance. Each adjustment to the interest rate will be based upon the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board in Statistical Release H.15 (519) ("Index") plus a margin. If the Index is no longer available, Lender will use as a new Index any index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

Lender will perform the calculations described below to determine the new adjusted interest rate. The interest rate may change on the first day of **DECEMBER, 1997**, and on ☐ that day of each succeeding year ☒ the first day of each succeeding month ("Change Date") until the loan is repaid in full.

The value of the Index will be determined, using the most recent Index figure available thirty (30) days before the Change Date ("Current Index"). Before each Change Date, the new interest rate will be calculated by adding a margin to the Current Index. The sum of the margin plus the Current Index will be called the "Calculated Interest Rate" for each Change Date. The Calculated Interest Rate will be compared to the interest rate in effect immediately prior to the current Change Date (the "Existing Interest Rate").

☐ (Annually Adjusting Variable Rate Feature) The Calculated Interest Rate cannot be more than 2.0% higher or lower than the Existing Interest Rate, nor can it be more than 5.0% higher or lower than the Initial Interest Rate.

☒ (Monthly Adjusting Variable Rate Feature) The Calculated Interest Rate will never increase above **SIXTEEN AND 670/1000** percent ( 16.67000 %).

The Calculated Interest Rate will be adjusted if necessary to comply with these rate limitation(s) and will be in effect until the next Change Date. At any Change Date, if the Calculated Interest Rate equals the Existing Interest Rate, the interest rate will not change.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**24. Accelerated Redemption Periods.** If (a) the Property is 20 acres or less in size, (b) Lender in an action to foreclose this Security Instrument waives all right to a judgment for deficiency and (c) Lender consents to Borrower's remaining in possession of the Property, then the sale of the Property may be 6 months from the date the judgment is entered if the Property is owner-occupied at the time of the commencement of the foreclosure action. If conditions (b) and (c) above are met and the Property is not owner-occupied at the time of the commencement of the foreclosure action, then the sale of the Property may be 3 months from the date the judgment is entered. In any event, if the Property has been abandoned, then the sale of the Property may be 2 months from the date the judgment is entered.

**25. Attorneys' Fees.** If this Security Instrument is subject to Chapter 428 of the Wisconsin Statutes, "reasonable attorneys' fees" shall mean only those attorneys' fees allowed by that Chapter.

**26. Obligatory Loan Advances.** Lender's responsibility to make Loan Advances under the terms of the Loan Agreement, including Loan Advances of principal to Borrower as well as Loan Advances for interest, MIP, Servicing Fees and other charges, shall be obligatory.

XD42 : 05/97          Page 7 of 8

**27. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

☐ Condominium Rider   ☐ Shared Appreciation Rider   ☐ Planned Unit Development Rider
☐ Other (Specify)

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____   *Gertrude Mosley*   _____ (Seal)
                            GERTRUDE MOSLEY                  -Borrower

_____   _____   _____ (Seal)
                                                                 -Borrower

——————————— [Space Below This Line For Acknowledgment] ———————————

**STATE OF WISCONSIN** ,              **MILWAUKEE COUNTY SS:**

The foregoing instrument was acknowledged before me this   **OCTOBER 03, 1997**         , by
**GERTRUDE MOSLEY**

My commission expires: *is permanent*   _____
                                         Notary Public

(Seal)

This instrument was drafted by: *Kevith Ulven*

**UNITY MORTGAGE CORP.** _____

XD43 : 05/97                              Page 8 of 8

# STATE OF WISCONSIN
## DEPARTMENT OF HEALTH SERVICES
### ORIGINAL CERTIFICATE OF DEATH
### FACT OF DEATH

STATE OF DEATH: MAY 05, 2016
STATE FILE NUMBER: 2016017741

2. SOCIAL SECURITY NUMBER

3. DATE PRONOUNCED DEAD
APRIL 29, 2016

9. COUNTY OF DEATH
MILWAUKEE

**1. DECEDENT'S NAME**
First: GERTRUDE
Middle:
Last: MOSLEY

**4. TIME PRONOUNCED DEAD (24hr)** 04:05
**5. AGE** 92 YEARS
**6. DATE OF BIRTH**
**7. SEX** FEMALE
**8. CITY, VILLAGE, OR TOWNSHIP OF DEATH** MILWAUKEE (CITY)

**10. PLACE OF DEATH** NURSING HOME
**11. FACILITY NAME AND ADDRESS OF DEATH** THE VILLA AT BRADLEY ESTATES, 6735 W BRADLEY RD

**12. RESIDENCE ADDRESS** 4930 W NASH ST
**13. RESIDENCE CITY, VILLAGE, OR TOWNSHIP** MILWAUKEE (CITY)
**14. RESIDENCE COUNTY** MILWAUKEE
**15. RESIDENCE STATE** WISCONSIN

**16. MARITAL STATUS** DIVORCED
**17. IN DOMESTIC PARTNERSHIP** NO
**18. SURVIVING SPOUSE'S BIRTH NAME**
**19. STATE OF BIRTH** MISSISSIPPI

**21. FATHER'S BIRTH NAME**
First: AARON
Middle:
Last: SERGENT

**22. MOTHER'S BIRTH NAME**
First: BERTHELL
Middle:
Last: ATHON
**20. DECEDENT'S BIRTH LAST NAME** SERGENT

**23. INFORMANT'S NAME**
First: MARY
Middle:
Last: NEVELS
**24. INFORMANT'S MAILING ADDRESS** 10310 HEATHER DR, MEQUON, WI 53097

**25. NAME AND ADDRESS OF FUNERAL FACILITY** NORTHWEST FUNERAL CHAPEL, 6630 W HAMPTON AVE, MILWAUKEE, WI 53218
**26. FUNERAL DIRECTOR'S NAME**
BYRD, MICHELLEY
**27. DATE SIGNED** MAY 04, 2016

**28. MANNER OF DEATH** NATURAL
**29. TYPE OF MEDICAL CERTIFIER** PHYSICIAN
**30. MEDICAL CERTIFIER'S NAME AND TITLE** KRISHNA PANDEY, MD
**31. DATE SIGNED** MAY 03, 2016

**32. DATE OF DEATH** APRIL 29, 2016
**33. TIME OF DEATH (24hr)** 04:05
**34. MEDICAL CERTIFIER'S MAILING ADDRESS** 7733 W BURLEIGH ST, MILWAUKEE, WI 53210

## EXTENDED FACT OF DEATH

**35. USUAL OCCUPATION** FOOD SERVICE WORKER
**36. KIND OF BUSINESS/INDUSTRY** HOSPITALS
**37. EVER IN US ARMED FORCES** NO
**38. DECEDENT TRIBAL MEMBER** NO
**38a. TRIBE NAME(S):**

**39. METHOD OF DISPOSITION** BURIAL
**40. PLACE AND LOCATION OF DISPOSITION** GRACELAND CEMETERY, MILWAUKEE, WISCONSIN

**40. PART I** The conditions listed are the diseases, injuries, or complications that caused death. Conditions leading to the immediate cause are listed sequentially and the underlying cause is listed last.

Immediate cause: (a) ISCHEMIC STROKE | Interval Between Onset and Death: UNKNOWN

Due to (b) or as a consequence of: (b)

Due to (c) or as a consequence of: (c)

Due to (d) or as a consequence of: (d)

**41. PART II. OTHER SIGNIFICANT CONDITIONS** contributing to death but not resulting in the underlying cause given in Part I.

**42. AUTOPSY PERFORMED** NO
**43. DATE OF INJURY**
**44. TIME OF INJURY (24hr)**
**45. INJURY AT WORK**
**46. PLACE OF INJURY**

**47. LOCATION OF INJURY**

**48. COUNTY OF INJURY**

**49. INJURY STATE/ANYWHERE IN CAUSE OF DEATH (Part I or Part II), DESCRIBE HOW IT OCCURRED**

NO AMENDMENTS PRESENT

I certify that this document contains a true and correct reproduction of facts on file with the Wisconsin Vital Records Office.

*Karen Michalski* (signature)
KAREN MICHALSKI
CITY OF MILWAUKEE HEALTH DEPARTMENT

15506179

1796005

Date Issued: MAY 05, 2016

**Exhibit F**

# Statement of Account

**U.S. Department of Housing and Urban Development**
Office of Finance and Accounting

| | HUD Field Office |
|---|---|

To **HUD/OFFICE OF GENERAL COUNSEL**

| 1. FHA Case Number | 2. Account Number |
|---|---|
| 581-2030946 | 581-2030946 |

| 3. Mortgagor/Owner | 4. Social Security Number |
|---|---|
| GERTRUDE MOSELEY | XXX-XX-3480 |

| 5. Co-Mortgagor | 6. Social Security Number |
|---|---|

| 7. Name of original mortgagor if different from above | 8. Property Address |
|---|---|
| | 1930 W NASH ST MILWAUKEE, WI 53206 |

## Part 1. General Account Information

| Original Mortgage Amount | Unpaid Principal Balance $28,284.69 | Escrow Balance | Interest Rate 3.620 | Term |
|---|---|---|---|---|
| Type of mortgage HECM | Last payment applied | Date | Date of oldest unpaid Interest Installment | |

| Type of Tax | Year | Amount | Date sent to RAD | Date Deducted from Account |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

**Please Note:** The information provided may change subject to un-collectibles from previous owner or foreclosures of other costs incurred but not posted against the account.

## Part 2. Assumption Information / Bring Current Information

Other mortgage is to be assumed: 1. Remit certified funds to bring account current; 2. Provide a copy of the conveyance document; 3. Provide letter from seller authorizing transfer of escrow funds to buyer (no escrow funds will be refunded); 4. Provide verification of Hazard Insurance coverage.

| Bring Current Amount | |
|---|---|
| Principal | $28,284.69 |
| Interest | $22,979.24 |
| Tax Escrow Required | |
| Service Charge | $5,199.46 |
| Late Charge | |
| Tax Advance | |
| Other (specify) MIP | $3,430.89 |
| Interest on Advances | |
| Total to Bring Current as of: 09/21/2018 | $59,894.28 |
| Current Monthly Payment Principal and Interest | |
| Tax Escrow | |
| Service Charge | |
| Total Monthly Payment See back of page if mortgage is 235 | |

## Part 3. Payoff Information

| | |
|---|---|
| Principal Balance | $28,284.69 |
| Interest Due | $22,979.24 |
| Service Charge | $5,199.46 |
| Late Charge | |
| Returned Check Charge | |
| Advance Amount | |
| Tax Escrow Applied | |
| Other (specify) MIP | $3,430.89 |
| Interest on Advances | |
| Taxes Paid but Not Posted | |
| Total Payoff Amount as of: 09/21/2018 | $59,894.28 |
| Per Diem Service Charge | |
| Per Diem Interest | $6.76 |

| Prepared by ALYSSA WARSTLER | Title CASH ANALYST | Date 09/21/2018 |
|---|---|---|

I hereby certify that the above is a true and correct statement of the unpaid balance due on the Note and Mortgage (or Deed of Trust) identified above and held by the Secretary of the U.S. Department of Housing and Urban Development.

**Warning:** HUD will prosecute false claims and statements. Conviction may result in criminal and/or civil penalties. (18 U.S.C. 1001, 1010, 1012; 31 U.S.C. 3729, 3802)

| Certified by KAYE JAMES | Title CASH MANAGEMENT | Date 09/21/2018 |
|---|---|---|

form HUD-698 (1/89)

Exhibit G

**Sensitive Information:** The information collected on this form is considered sensitive and is protected by the Privacy Act. The Privacy Act requires that these records be maintained with appropriate administrative, technical, and physical safeguards to ensure their security and confidentiality. In addition, these records should be protected against any anticipated threats or hazards to their security or integrity which could result in substantial harm, embarrassment, inconvenience, or unfairness to any individual on whom the information is maintained.

**If the Mortgage is receiving subsidy**

Anniversary date

Date of last recertification

Monthly subsidy

Mortgagor's payment

Full mortgage payment

---

**Affidavit as to Status of Account**

State of OKLAHOMA

County of OKLAHOMA

On this 21 day of (mm/yyyy) 09/18 ,

personally appeared before me, the undersigned attesting officer, HEATHER CAMPBELL ,

who being sworn on oath, says that he/she is the LOAN SERVICING MANAGER

of the Department of Housing and Urban Development, a duly constituted agency of the United States of America, that he/she is duly authorized to make this affidavit; that the foregoing statement was prepared from the books and records of the Department of Housing and Urban Development on 09/21/2018 , and that affidavit has cusody of the said books and records and to the best of his/her knowledge and belief the foregoing statement correctly reflects the status of the account as of 09/21/2018 .

Sworn and Subscribed before me this 21 day of 09/2018 .

Notary Public

**KENZIE MCCRARY**
Notary Public
State of Oklahoma
Commission # 18003568 Expires 04/09/22

form HUD-698 (1/89)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

Place an "X" in the appropriate box: ☐ Green Bay Division ☐ Milwaukee Division

## I. (a) PLAINTIFFS

## DEFENDANTS

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question *(U.S. Government Not a Party)*

☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)* and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | Liability | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Med. Malpractice | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Empl. Ret. Inc. Security Act | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee (Prisoner Petition) | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district *(specify)*

☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:

**JURY DEMAND:** ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE

DOCKET NUMBER

DATE

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # AMOUNT APPLYING IFP JUDGE MAG. JUDGE

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.**      **(a) Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence.  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys.  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**      **Jurisdiction**.  The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.

United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked.  (See Section III below; federal question actions take precedence over diversity cases.)

**III.**      **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**      **Nature of Suit**.  Place an "X" in the appropriate box.  If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit.  If the cause fits more than one nature of suit, select the most definitive.

**V.**      **Origin**.  Place an "X" in one of the seven boxes.

Original Proceedings.  (1) Cases which originate in the United States district courts.

Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.  When the petition for removal is granted, check this box.

Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.

Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.

Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.  When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment.  (7) Check this box for an appeal from a magistrate judge's decision.

**VI.**      **Cause of Action**.  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity**.      Example:      U.S. Civil Statute: 47 USC 553
                                                                                            Brief Description: Unauthorized reception of cable service

**VII.**      **Requested in Complaint**.  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand.  In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**      **Related Cases**.  This section of the JS 44 is used to reference related pending cases if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature**.  Date and sign the civil cover sheet.